**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| JORDAN WILSON, | ) Case No. <br> ) <br> ) |
| Plaintiff, | ) <br> ) |
| vs. | ) **COMPLAINT FOR VIOLATIONS** <br> ) **OF THE FEDERAL SECURITIES** <br> ) **LAWS** |
| VIASAT, INC., MARK D. DANKBERG, RICHARD A. BALDRIDGE, JAMES BRIDENSTINE, ROBERT W. JOHNSON, SEAN PAK, VARSHA RAO, JOHN P. STENBIT, and THERESA WISE, | ) **JURY TRIAL DEMANDED** <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

Plaintiff Jordan Wilson upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Viasat, Inc. ("Viasat" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the Board's attempt to merge Viasat with Connect Topco Limited ("Inmarsat Holdings," and together with its subsidiaries, "Inmarsat Group") (the "Proposed Transaction").

2. On November 8, 2021, Viasat entered into a Share Purchase Agreement with Inmarsat Holdings (the "Purchase Agreement"). Pursuant to the terms of the Purchase Agreement, Viasat will acquire all of the outstanding ordinary shares of Inmarsat Holdings for $850 million in cash and 46,363,636 shares of Viasat common stock. Under the Purchase

Agreement, the Company is required to issue additional shares of Viasat common stock to Inmarsat Holdings shareholders (the "Share Issuance"), who will own approximately 38% of the combined company. As a NASDAQ listed company, Viasat is required by NASDAQ listing rules to secure shareholder approval before issuing 20% or more of its outstanding common stock. Thus, the Proposed Transaction is contingent upon Viasat shareholders voting to approve the proposed Share Issuance.

3.  On May 20, 2022, the Board authorized the filing of the materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. Specifically, the Proxy Statement, which recommends that Viasat stockholders vote their shares in favor of the Share Issuance and the Proposed Transaction, contains materially incomplete and misleading information concerning, among other things: (a) the financial analyses that support the fairness opinion provided by the Company's financial advisor, PJT Partners LP ("PJT Partners"); and (b) PJT Partners' potential conflicts of interest.

4.  It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.[1]

5.  For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

---

[1] The vote on the Proposed Transaction currently is scheduled for June 21, 2022.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of shares of Viasat common stock.

10. Defendant Viasat is a Delaware corporation, with its principal executive offices located at 6155 El Camino Real, Carlsbad, California 92009. Viasat's shares trade on the NASDAQ Global Select Market under the ticker symbol "VSAT."

11. Defendant Mark D. Dankberg is and has been Chairman of the Board and Executive Chairman of the Company at all relevant times.

12. Defendant Richard A. Baldridge is and has been President, Chief Executive Officer, and a director of the Company at all relevant times.

13. Defendant James Bridenstine is and has been a director of the Company at all relevant times.

14.     Defendant Robert W. Johnson is and has been a director of the Company at all relevant times.

15.     Defendant Sean Pak is and has been a director of the Company at all relevant times.

16.     Defendant Varsha Rao is and has been a director of the Company at all relevant times.

17.     Defendant John P. Stenbit has a director of the Company at all relevant times.

18.     Defendant Theresa Wise is and has been a director of the Company at all relevant times.

19.     Defendants identified in paragraphs 11-18 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

20.     On November 8, 2021, Viasat announced in relevant part:

CARLSBAD, Calif., and LONDON, Nov. 8, 2021 -- Viasat Inc., (NASDAQ: VSAT), a global communications company, and Inmarsat, a leading provider of global mobile satellite communications services, today announced they have entered into a definitive agreement under which Viasat will acquire Inmarsat in a transaction valued at $7.3 billion, comprised of $850.0 million in cash, approximately 46.36 million shares of Viasat common stock valued at $3.1 billion based on the closing price on Friday November 5, 2021, and the assumption of $3.4 billion of net debt.

The combination will create a leading global communications innovator with enhanced scale and scope to affordably, securely and reliably connect the world. The complementary assets and resources of the new organization will enable the availability of advanced new services in mobile and fixed segments, driving greater customer choice in broadband communications and narrowband services (including the Internet of Things or "IoT").

The combined company intends to integrate the spectrum, satellite and terrestrial assets of both companies into a global high-capacity hybrid space and terrestrial network, capable of delivering superior services in fast-growing commercial and government sectors. This advanced architecture will create a framework

incorporating the most favorable characteristics of multi-band, multi-orbit satellites and terrestrial air-to-ground systems that can deliver higher speeds, more bandwidth, greater density of bandwidth at high demand locations like airport and shipping hubs and lower latency at lower cost than either company could provide alone.

Both companies have proven track records of product and service innovation. Viasat has advanced North American residential and aviation connectivity and defense communications with technology and business models embraced by customers. Viasat is also recognized for driving change through its pioneering ultra-high-capacity satellite technology, which has delivered superior value at attractive, affordable economics.

Inmarsat has an exceptional presence in the growing global mobility segment and is at the forefront of network design with its recently announced multi-dimensional mesh network. It is preparing to expand its global network later this year with its most powerful and advanced software-defined commercial communications satellites ever, offering both Ka- and L-band capabilities. Inmarsat has a global presence, a robust distribution channel spanning the rapidly growing mobility, government, IoT and enterprise sectors and currently provides safety and connectivity services to more than one million mobility and defense platforms.

The combined company will be able to offer:

- A broad portfolio of spectrum licenses across the Ka-, L- and S-bands and a fleet of 19 satellites in service with an additional 10 spacecraft under construction and planned for launch within the next three years.
- A global Ka-band footprint, including planned polar coverage, to support bandwidth-intensive applications, augmented by L-band assets that support all-weather resilience and highly reliable, narrowband and IoT connectivity.
- The ability to unlock greater value from Inmarsat's L-band spectrum and existing space assets by incorporating Viasat's state-of-the-art beamforming, end-user terminal and payload technologies and its hybrid multi-orbit space-terrestrial networking capabilities.
- Viasat's highly vertically-integrated technology and service offerings, along with Inmarsat's extensive eco-system of technology, manufacturing and service distribution.

"This is a transformative combination that advances our common ambitions to connect the world. The unique fusion of teams, technologies and resources provides the ingredients and scale needed for profitable growth through the creation and delivery of innovative broadband and IoT services in new and existing fast-growing segments and geographies," said Viasat's Executive Chairman Mark Dankberg. "Inmarsat's dual-band global mobile network, unique L-band resources, skills and capabilities in the U.K. and excellent technical and operational talent worldwide, are powerful complements to Viasat's business. Together, we can advance

broadband communications and create new hybrid space and terrestrial networks that drive greater performance, coverage, speed, reliability and value for customers. We look forward to welcoming the Inmarsat team into the Viasat family."

"Joining with Viasat is the right combination for Inmarsat at the right time," said Rajeev Suri, CEO of Inmarsat. "Viasat is a terrific innovator and Inmarsat brings some powerful additions: global reach, a broad distribution channel, robust business momentum and a presence in highly attractive global mobility segments. Together, the two companies will create a new global player with the scale and scope to help shape the future of a dynamic and growing industry. The combination will create a strong future for Inmarsat and be well-positioned to offer greater choice for customers around the world, enhanced scope for partners and new opportunities for employees. The industrial logic is compelling and ensures that the U.K. has a strong and sustainable presence in the critical space sector for the long term."

Rick Baldridge, Viasat's president and CEO added, "This strategic move gives Viasat the scale to increase the pace of innovation that drives new and better services for our customers, broadens the opportunities for our employees and provides a foundation for significant positive free cash flow, with potential upside from a revitalization of L-band and IoT service growth. Plus, we will have expanded scale and presence in the $1.6 trillion broadband and IoT sectors. I'm excited about the opportunities ahead and looking forward to setting up the combined organization for long-term success."

**Driving increased innovation and sustainability in the U.K. space sector**
Viasat plans to build on Inmarsat's presence in the U.K. and is committed to preserving and growing the investment of the combined company in U.K. space communications, as well as supporting the recently published National Space Strategy. The combined company will cooperatively engage with the U.K. government with a view to operating in the U.K. consistent with the commitments previously made by Inmarsat/Connect BidCo, and expects continued constructive engagement across the U.K.'s thriving innovation ecosystem. It further intends to work closely with the U.K. government to bring additional space capabilities and other advanced technologies to the country as well as long-term, highly skilled engineering and related jobs for U.K.-based employees. Viasat plans to preserve and grow Inmarsat's London headquarters, as well as its footprint in Australia and Canada and across Europe, the Middle East, Africa and Asia Pacific.

**Transaction terms and financial highlights**
Under the terms of the agreement, Inmarsat's shareholders will receive $850.0 million in cash, subject to adjustments, and approximately 46.36 million newly issued Viasat shares valued at $3.1 billion, based on the closing price of $67.00 per Viasat share on November 5, 2021. At closing, on a pro forma basis, Inmarsat shareholders are expected to be issued shares representing an aggregate of 37.5%

of Viasat stock on a fully diluted basis, with each of the existing Inmarsat shareholders receiving shares representing less than 10%.

The combined company's revenue and earnings profile is expected to be more diverse, resilient and global. Viasat estimates that the combined company has the potential for mid-teens percentage revenue and Adjusted EBITDA growth with a fully funded path to positive free cash flow, with upside from new IoT applications and greater utilization of global space assets.

This transaction is expected to deliver meaningful and enduring capital, operating and cross-selling revenue synergies, with operating and capital expenditure synergies alone expected to drive value creation of $1.5 billion on an after-tax NPV basis. In addition, both companies are nearing the end of unusually intensive capital investment cycles within the next 24 to 36 months and expect significant subsequent benefits from converging their respective architectures into a joint, high-performance global network.

**Financing overview**
Viasat has obtained financing commitments for $2.3 billion of new debt facilities required to complete this transaction, a portion of which is to be raised between signing and closing to fund Viasat's standalone growth expenditures. Viasat also plans to assume $2.1 billion in principal amount of Inmarsat senior secured bonds and $1.7 billion outstanding under Inmarsat's $2.4 billion of senior secured credit facilities.  Viasat has also obtained commitments of $3.2 billion to backstop certain amendments required under Viasat's $700 million credit facility, $88.4 million outstanding under Viasat's Ex-Im credit facility and Inmarsat's $2.4 billion of senior secured credit facilities. Upon closing, the combined company is expected to have a fully funded path to generating positive free cash flow on a timeline substantially consistent with Viasat's previous standalone guidance. Assuming closing occurs during the second half of calendar year 2022, Viasat's pro forma net leverage ratio at December 31, 2022 is projected to be approximately 5.0x LTM Adjusted EBITDA and is expected to decline to less than 4.0x within 24 months thereafter.

**Leadership, governance and closing conditions**
The transaction has been unanimously approved by the boards of directors of both Viasat and Inmarsat. In addition, The Baupost Group, L.L.C., Viasat's largest shareholder, has agreed to vote in favor of the transaction. At the closing of the transaction, Viasat intends to expand its board of directors from eight to ten members, with Andrew Sukawaty, current chairman of Inmarsat, being appointed as one of the two new board members. A second new board member will be appointed at transaction closing by the current Inmarsat shareholders.

During the period prior to the closing of the transaction, Viasat expects members of Inmarsat's management team to continue to execute its strategy and provide leadership, in-depth industry knowledge and customer relationship support.

>Decisions regarding management of the combined company following the closing of the transaction will be made as part of the integration planning process.
>
>The transaction is expected to close in the second half of calendar year 2022, subject to the approval of Viasat stockholders, the receipt of certain regulatory approvals and clearances and the satisfaction of other customary closing conditions.

**The Materially Incomplete and Misleading Proxy Statement**

21. On May 20, 2022, the Board caused to be filed a materially incomplete and misleading Proxy Statement with the SEC. The Proxy Statement, which recommends that Viasat stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading information, concerning: (a) the financial analyses that support the fairness opinion provided by the Company's financial advisor, PJT Partners; and (b) PJT Partners' potential conflicts of interest.

*Material Misrepresentations and/or Omissions Concerning PJT Partners' Financial Analyses*

22. The Proxy Statement fails to disclose material information concerning PJT Partners' financial analyses.

23. With respect to PJT Partners' *Discounted Cash Flow Analysis* of each of Inmarsat Group and Viasat, the Proxy Statement fails to disclose: (a) the terminal values for each company; and (b) the inputs and assumptions underlying the discount rate range of 7.5% to 8.5% for Inmarsat Group and 8.0% to 9.0% for Viasat.

24. With respect to PJT Partners' *Selected Precedent M&A Transactions Analysis*, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the transactions analyzed.

*Material Misrepresentations and/or Omissions Concerning PJT Partners' Potential Conflicts of Interest*

25. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by PJT Partners.

26. With respect to PJT Partners' compensation, the Proxy Statement fails to disclose: (a) the amount by which "the transaction fee payable to PJT Partners may be increased" (Proxy Statement at 75); and (b) whether the Company anticipates paying PJT Partners an increase in the transaction fee.

27. Additionally, the Proxy Statement fails to disclose the amount of compensation PJT Partners has received from affiliates of each of Viasat, Inmarsat Group and the "Sellers"[2] for the services PJT Partners has performed for each of these companies and/or their affiliates in the two years preceding the date of its fairness opinion. *See id.*

28. The Proxy Statement further fails to disclose the amount of compensation PJT Partners expects to receive for arranging the financing for the Proposed Transaction. *See* Press Release, Viasat, Inc., "Viasat and Inmarsat to Combine, Creating a New Leading Global Communications Innovator" (Nov. 8, 2021), https://investors.viasat.com/news-releases/news-release-details/viasat-and-inmarsat-combine-creating-new-leading-global.

29. In sum, the omission of the above-referenced information renders statements in the "Opinion of Our Financial Advisor" section of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the stockholder vote, Plaintiff and the other stockholders of Viasat will be unable to make a sufficiently informed decision in connection with the Share Issuance and the

---

[2] Defined in the Proxy Statement as the existing shareholders of Inmarsat Holdings, together with management and employees who hold options and shares of a subsidiary of Inmarsat Holdings. *See id.* at 2.

Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## **CLAIMS FOR RELIEF**

## **COUNT I**

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Viasat**

30. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

31. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Viasat is liable as the issuer of these statements.

32. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

33. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

34. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Share Issuance and the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

35. The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

36. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

37. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

38. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

39. The Individual Defendants acted as controlling persons of Viasat within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Viasat and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

40. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

41. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of

the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

42. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

43. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Tivity Health, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, including the stockholder vote on the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  June 1, 2022

**LONG LAW, LLC**

By */s/ Brian D. Long*
Brian D. Long (#4347)
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@longlawde.com

*Attorneys for Plaintiff*